IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-HC-2029-FL

LUTHER DANIEL STIDHAM,                )
                                      )
            Petitioner,               )
                                      )
      v.                              )           ORDER
                                      )
SUPERINTENDENT LAMAR                  )
PAYSOUR, et al.,                      )
                                      )
            Respondents.              )


Luther Daniel Stidham ("petitioner"), a state inmate, petitions this court for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. This matter came before the court on the motion for summary

judgment (DE # 8) pursuant to Federal Rule of Civil Procedure 56 of respondent Administrator of

Gaston Correctional Center Lamar Paysour ("respondent"). Also before the court are petitioner's

motion to supplement (DE # 6), motion for an evidentiary hearing (DE # 13), motion to reconsider

this court's denial of his appointment of counsel (DE # 16), motion to compel (DE # 17), motion to

amend (DE # 19), and motion to amend his answer (DE # 20). These matters are ripe for

adjudication. For the following reasons, the court grants respondent's motion for summary

judgment, grants petitioner's motion to supplement as well as his motion to amend, and motion to

amend his answer, and denies petitioner's remaining motions.

**STATEMENT OF CASE**

On September 22, 2008, petitioner pleaded guilty, pursuant to North Carolina v. Alford, 400

U.S. 25 (1970), in the Brunswick County Superior Court to one count of second-degree rape and two

counts of taking indecent liberties with a minor. (Pet. Attach. pp. 62-73.) Petitioner was sentenced to one active sentence of fifty-four (54) to seventy-four (74) months followed by two consecutive terms of thirteen (13) to sixteen (16) months imprisonment suspended with probation. (Id.) Petitioner did not file a direct appeal.

On June 9, 2009, petitioner filed a *pro se* motion for appropriate relief ("MAR") in the Brunswick County Superior Court, which was denied on June 17, 2009. (Resp.'t's Mem. Ex. 1.) In its June 17, 2009 order denying petitioner's MAR, the Superior Court judge stated: "That any future claims, assertions, petitions or motions hereinafter filed by the Defendant [are] BARRED, and the Court shall not address the same." (Pet. Attach. pp. 5-8.) On October 22, 2009, petitioner filed a second MAR and motion to amend in the Brunswick County Superior Court, which he attached to his petition for a writ of certiorari. (Resp't's Mem. Ex. 2.) Petitioner's second MAR was not addressed.

On November 6, 2009, petitioner filed a *pro se* petition for writ of certiorari in the North Carolina Court of Appeals. (Id. Ex. 2.) On November 25, 2009, the Court of Appeals denied petitioner's certiorari petition. (Id. Ex. 3.) On January 14, 2010, petitioner filed a pro se petition for a writ of mandamus in the North Carolina Court of Appeals seeking review of the Brunswick County Superior Court's order barring him from obtaining review of subsequent MARs. (Id. Ex. 4.) Mandamus was denied on January 28, 2010. (Id. Ex. 5.)

On February 24, 2010, petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, petitioner alleges several claims based upon his trial counsel's alleged ineffective assistance. Petitioner also alleges the following: (1) his conviction was obtained in violation of his right to present evidence in his defense pursuant to the Fifth, Sixth, and Fourteenth

2

Amendments of the United States Constitution; (2) his conviction was obtained with evidence from an unlawful search and seizure in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution; (3) his conviction was obtained with evidence attained and admitted in violation of the Stored Communications Act and in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution; and (4) his rights pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution were violated because there has been a significant change in the law. Petitioner further contends that he possesses newly discovered evidence. Finally, petitioner alleges that the MAR court lacked jurisdiction to issue its July 17, 2009 ruling, and that the MAR court's July 17, 2009 ruling was unreasonable and contrary to federal law.

On June 14, 2010, petitioner filed a motion to supplement his petition. On June 18, 2010, respondent filed a motion for summary judgment, arguing that petitioner's claims are without merit. On July 2, 2010, petitioner filed a response to respondent's motion for summary judgment. Petitioner thereafter filed a motion for an evidentiary hearing, a motion to reconsider this court's denial of petitioner's motion to appoint counsel, a response, and a motion to compel. Petitioner thereafter filed two motions captioned: "Motion to Amend Petitioner's Answer to Respondents' Reply to Petitioner's Memorandum Filed July 16, 2010."

## STATEMENT OF FACTS

The State summarized the its evidence at petitioner's guilty plea hearing as follows:

> MS. EVERHART [PROSECUTOR]: YES, YOUR HONOR. IF THIS MATTER HAD GONE TO TRIAL, YOUR HONOR, THE STATE'S EVIDENCE WOULD TEND TO SHOW THAT ON OR ABOUT THE 11TH DAY OF SEPTEMBER 2006, DETECTIVE DONNA SIMPSON OF THE BRUNSWICK COUNTY SHERIFF'S DEPARTMENT AT THE TIME, WAS NOTIFIED BY MR. LOUVENA (PHONETIC SPELLING) AND MISS SHERRY

3

LEWIS, WHO'S THE MOTHER OF THE VICTIM, MS. BRITTANY LEWIS, OF POSSIBLE SEXUAL ENCOUNTERS BETWEEN THE DEFENDANT, LUKE STIDHAM, WHO WAS 35 YEARS OLD AT THE TIME, AND THEIR DAUGHTER, BRITTANY LEWIS, WHO WAS 14 YEARS OLD AT THE TIME. DETECTIVE SIMPSON CONTACTED THE STATE BUREAU OF INVESTIGATION BECAUSE THE DEFENDANT WAS AN ACTIVE POLICE OFFICER WITH THE BOILING SPRINGS LAKES POLICE DEPARTMENT AND REQUESTED THE ASSISTANCE OF THE S.B.I. IN THIS MATTER.

THE VICTIM IN THIS CASE, BRITTANY NICOLE LEWIS, WHO IS PRESENT IN THE COURTROOM, YOUR HONOR, SHE'S SEATED ON THE FRONT ROW BEHIND ME, THIRD FROM YOUR RIGHT FROM THE CENTER, PRESENT IN THE COURTROOM, AND SHE HAD RECENTLY BEEN RELEASED FROM CARE AT THE BRYNMAR HOSPITAL FOLLOWING A SUICIDE ATTEMPT BY TAKING TOO MANY TYLENOL PILLS ON AUGUST 31ST, 2006. AFTER SHE WAS RELEASED FROM BRYNMAR ON SEPTEMBER 7, 2006, SHE TOLD HER MOTHER AND STEP-FATHER THAT A LARGE PART OF WHY SHE HAD TAKEN THE PILLS WAS BECAUSE OF SOME EVENT THAT HAD OCCURRED BETWEEN SHE AND THE DEFENDANT, MR. STIDHAM, AND SHE INFORMED THEM THAT THERE HAD BEEN SEXUAL CONTACT BETWEEN THE TWO. DETECTIVE SIMPSON INTERVIEWED MS. LEWIS AT THE TIME AND INFORMED HER THAT SHE HAD INITIALLY MET THE DEFENDANT, MR. STIDHAM, AS HE WAS A POLICE OFFICER IN BOILING SPRING LAKES WHERE SHE WAS LIVING AT THE TIME WITH HER FATHER; AND THAT THEY HAD MET DURING THE MONTH OF JULY, 2006, AND THAT INITIALLY SHE HAD GONE ON A RIDE-ALONG WITH HIM IN HIS POLICE CAR. THAT WAS APPROVED BY HER FATHER. AND OFFICIAL FORMS WERE FILLED OUT AND THAT TYPE OF THING. SHE WAS IN R.O.T.C. AT THE TIME SO SHE THOUGHT THAT WOULD BE A GOOD THING FOR HER TO DO; HOWEVER, AFTER SHE WENT ON THIS FIRST OFFICIALLY SANCTIONED RIDE-ALONG, SHE AND THE DEFENDANT, THE EVIDENCE WOULD SHOW, BEGAN SPEAKING WITH EACH OTHER ON "MY SPACE" ON THE INTERNET, BACK AND FORTH, AND AT SOME POINT THE DEFENDANT SUGGESTED TO HER ON MY SPACE THROUGH EMAIL, THAT SHE ACTUALLY SNEAK OUT OF THE HOUSE,

4

AGAINST HER FATHER'S WILL-WISHES, AFTER HE WAS ASLEEP AND MEET HIM FOR ADDITIONAL UNSANCTIONED RIDE-ALONGS. AND THAT SHE DID SO ON TWO OTHER SEPARATE OCCASIONS BUT SHE AND TWO OF HER FRIENDS SNUCK OUT OF HER HOUSE AT SOME POINT AFTER MIDNIGHT ON TWO DIFFERENT OCCASIONS WHEN THE DEFENDANT WAS ON DUTY AS A POLICE OFFICER. THAT HE CAME AND MET THEM IN HIS PATROL SUV, PICKED THEM UP AND TOOK THE[M] ON RIDE-ALONGS AS HE WAS ON DUTY AND MS. LEWIS WILL TESTIFY THAT ON THOSE TWO UNSANCTIONED RI[DE]-ALONGS, THAT SHE KISSED THE DEFENDANT OR THAT THEY ENGAGED IN KISSING BETWEEN THE TWO OF THEM AND THAT WOULD BE THE BASIS FOR THE TWO INDECENT LIBERTIES CHARGES, WAS KISSING BETWEEN THE DEFENDANT AND THE VICTIM. AFTER THOSE TWO RIDE-ALONGS, THE TWO CONTINUED TO TALK ON MY SPACE AND TO MEET UP AT THE PARK BEHIND BOILING SPRING LAKES POLICE DEPARTMENT, SOMETIMES AS OFTEN AS EVERY SINGLE DAY, THEY WOULD ACTUALLY SEE EACH OTHER AND THEY WOULD CONTINUE TO TALK ON MY SPACE SOMETIMES TWO AND THREE TIMES A DAY. THE FINAL CHARGE OF SECOND DEGREE RAPE OCCURRED ON AUGUST THE 23RD, 2006, WHEN THEY HAD DISCUSSED MEETING AT 2:00 O'CLOCK IN THE MORNING AT A SIMILAR PLACE THAT THEY HAD PREVIOUSLY MET WHERE SHE WOULD SNEAK OUT OF THE HOUSE AGAIN AND SHE DID AND MET UP WITH HIM. ON THE EVENING OF THE 22ND, MORNING OF THE 23RD OF AUGUST, 2006, HE WAS AGAIN ON DUTY IN HIS PATROL SUV. THE EVIDENCE WOULD SHOW THAT, THAT NIGHT THEY DID, IN FACT, HAVE SEX IN HIS PATROL VEHICLE. THAT THERE WAS BOTH VAGINAL AND DIGITAL PENETRATION BUT THE BASIS FOR THE SECOND DEGREE RAPE CHARGE THAT WE HAVE ENTERED INTO THIS PLEA TO WAS THAT THE DEFENDANT WAS ABUSING HIS POSITION AND POWER AND DISCRETION AS A POLICE OFFICER AND THAT WOULD BE THE FORCE THAT WOULD BE ALLEGED TO IN THE SECOND DEGREE RAPE. MS. LEWIS HAD TOLD OFFICER STIDHAM ON MULTIPLE OCCASIONS THAT SHE HAD THOUGHT OF ENDING HER LIFE AND THAT SHE HAD CONTEMPLATED SUICIDE AND THAT TYPE OF THING. HER PARENTS WERE GOING THROUGH AN EMOTIONAL

5

DIVORCE AT THE TIME AND SHE WAS HAVING A LOT OF ISSUES THAT SHE WAS VERY UPSET ABOUT THAT HE TOOK ADVANTAGE OF HER EMOTIONAL STATE AT THE TIME AND USED HIS POSITION OF POWER AND TRUST BUT AS HER FRIEND, THROUGH THE FRIENDSHIP, THINGS DEVELOPED AND AS HIS POSITION AS A POLICE OFFICER TO TAKE ADVANTAGE OF THAT AND THAT WOULD BE THE BASIS OF THE SECOND DEGREE RAPE. MS. LEWIS INFORMED THE DETECTIVE THAT AFTER THEY HAD SEX THAT NIGHT, THAT ESSENTIALLY THE DEFENDANT HAD CUT OFF ALL TIES WITH HER. THEY QUIT MEETING. THEY QUIT WRITING BACK AND FORTH ON MY SPACE AND THAT SHE BECAME VERY DEPRESSED BECAUSE SHE FELT AS THOUGH HE HAD ESSENTIALLY GOTTEN WHAT HE WANTED OUT OF THE RELATIONSHIP AND DECIDED THAT HE DIDN'T HAVE ANY OTHER FURTHER USE FOR HER AND THAT AT THAT POINT SHE DECIDED TO ATTEMPT TO TAKE HER LIFE AND THAT WAS THE RESULT OF THE SUICIDE ATTEMPT THAT LED TO LAW ENFORCEMENT INVOLVEMENT.

SO THAT'S THE BASIS OF THE SHOWING FOR THE STATE AT THIS TIME.

THE COURT: REGARDING THE FACTUAL BASIS, MR. RAMOS [DEFENSE COUNSEL], ANY ADDITIONS OR DELETIONS?

MR. RAMOS: NO, SIR.

(TR. Pet. Attach. pp. 48-52.)

## DISCUSSION

I.      Motion to Supplement

Petitioner moves the court to supplement his petition. For good cause shown, petitioner's

motion to supplement is GRANTED.

6

II.    Motion to Appoint Counsel

Petitioner requests that this court reconsider its June 11, 2010 denial of his motion to appoint counsel. As stated in this court's June 11, 2010 order, there is no constitutional right to counsel in habeas corpus actions. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Under 18 U.S.C. § 3006A(a)(2)(B), a court may appoint counsel in a habeas corpus proceeding if it determines that "the interests of justice so require." The court has reviewed petitioner's motion for reconsideration and finds that its June 11, 2010 denial of petitioner's motion for appointment of counsel is correct. Therefore, the interests of justice do not mandate the appointment of counsel. Accordingly, petitioner's motion is DENIED.

III.   Motion to Compel

Petitioner seeks to compel the court to issue an unconditional writ of habeas corpus. For the reasons stated below, petitioner's motion to compel is DENIED.

IV.    Motion to Amend Petitioner's Answer

Petitioner filed two separate pleadings captioned: "Motion to Amend Petitioner's Answer to Respondent's Reply to Petitioner's Memorandum Filed July 16, 2010" (DE #s 19 and 20). The pleadings are identical. With these motions, petitioner seeks to amend his pleadings to address respondent's assertion, in its July 9, 2010 pleading, that petitioner's response to respondent's motion for summary judgment seeks to raise a new separate claim for relief. For good cause shown, petitioner's motions to amend his answer are GRANTED.

7

V.      Motion for Summary Judgment

  A.  Standard of Review

  Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. <u>Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 250.

  The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. <u>See</u> 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. <u>Williams v. Taylor</u>, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies

8

the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

B.      Analysis

1.      Ineffective Assistance of Counsel

In his first claim, petitioner alleges that he received ineffective assistance of trial counsel. Petitioner raised his ineffective assistance of counsel claims in the MAR court. The MAR court summarily adjudicated petitioner's ineffective assistance of counsel claims and denied them.

To state a claim of ineffective assistance of counsel in the context of a guilty plea, a petitioner must satisfy a two-pronged test. Strickland v. Washington, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. Id. at 688. This court must be "highly deferential" of counsel's performance and

9

must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. For the second prong, a petitioner must show that he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

a.    Illegally Coerced Guilty Plea

In his first ineffective assistance of counsel claim, petitioner alleges he received ineffective assistance of counsel because his guilty plea was illegally induced. In support of his claim, petitioner argues that his plea was not knowing and voluntary because his sentence included the following conditions that were not part of his plea agreement: (1) participation in a sex offender treatment program during incarceration; (2) lifetime sex offender registration and electronic monitoring; and (3) three months of intense probation.    Petitioner also argues that his counsel was ineffective because he failed to object to the factual basis for his plea.

A guilty plea is made knowingly and voluntarily if the defendant is fully aware of the direct consequences of his guilty plea, unless it was induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes). Brady v. United States, 397 U.S. 742, 755 (1970). Generally, if the district court fully questions a defendant regarding the waiver of his right to appeal during the plea hearing, the waiver is both valid and enforceable. United States v. Wessells, 936 F.2d 165, 167-68 (4th Cir. 1991). Additionally, "[t]he representations of the defendant, his lawyer, and the prosecutor at a

10

[plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blacklege v. Allison, 431 U.S. 63, 73-74 (1977).

The facts in this case establish that petitioner's plea was knowing and voluntary, without the interference of coercion. In particular, petitioner testified at the plea hearing that he discussed his case fully with his lawyer, that his lawyer explained the nature of the charges, each element of the offenses, as well as possible defenses. (See Resp't's Mem. Ex. 1.) Petitioner testified that he was satisfied with his attorney's services, and that he was entering his plea of his own free will without any undue outside influence. (Id.) He also agreed that no person made any promises or threatened him in any way to cause him to enter the plea against his wishes. (Id.) Petitioner further testified that he was not under the influence of alcohol, drugs, narcotics, medicines, or pills. (Id.) After listening to petitioner's response to the guilty plea colloquy in open court and observing petitioner's demeanor, the trial court judge found as a fact that petitioner was competent to stand trial. (Id.) Moreover, the transcript from petitioner's plea hearing reflects that petitioner specifically was informed of the following conditions: (1) participation in a sex offender treatment program during incarceration; (2) lifetime sex offender registration and electronic monitoring; and (3) three months of intense probation. (Tr. Pet. p. 54.) Petitioner did not object to these conditions and proceeded to plead guilty.

Absent extraordinary circumstances, these solemn in-court representations should be deemed conclusive. Via v. Superintendent, Powhatan Corr. Ctr., 643 F.2d 167, 171 (4th Cir. 1981); see also Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Little v. Allsbrook, 731 F.2d 238, 239-40 n.2 (4th Cir. 1984). The evidence in the record demonstrates petitioner was made aware of the disputed conditions prior to entering his guilty plea. His sentencing transcript also demonstrates that he was

11

well aware of what his guilty plea and sentence entailed, and thereafter entered a plea of guilty. Petitioner's in-court representations during his guilty plea hearing are deemed conclusive and the plea is found to have been knowingly and voluntarily entered with the advice of competent counsel. Thus, the MAR court's finding that his guilty plea was valid, finding that his trial counsel was not constitutionally ineffective, and decision to affirm his conviction were not contrary to clearly established federal law. Thus, this claim is without merit.

        b.      Breach of Promise to Obtain Credit on his Sentence

Petitioner contends that his counsel promised that he would receive twenty-four (24) months of credit toward his sentence in exchange for his plea of guilty. The twenty-four (24) months of credit towards his sentence was not a term included within his plea agreement. Instead, the plea agreement provided the following terms:

> Defendant will be sentenced to an active sentence of 54 mths Min-74 mths Max for the 2nd degree Rape charge, 13 mths min-16 mths max sentence on the TLWC charges. These latter sentences are to be suspended and the Defendant will be placed on probation following the service of his active sentence. These latter sentences are to run consecutive to one another.

(Pet. p. 64.) (emphasis added).

The plea agreement further provided that the above conditions represent all of the terms and conditions of his plea. (Id.) Additionally, petitioner, himself, testified at his plea hearing that the plea arrangement set forth in his transcript of plea was his full plea arrangement. (Id. p. 63.) Petitioner further testified that he had not be promised anything or been threatened to cause him to enter into the plea agreement against his wishes. (Id.) Finally, petitioner testified that he entered the plea of his own free will, fully understanding what he was doing. (Id.) The record reflects that

12

petitioner received the favorable terms for which he bargained. Accordingly, he has not demonstrated that his counsel's performance fell below an objective standard of reasonableness. Thus, he is unable to establish the objective prong of the <u>Strickland</u> test to establish that he received ineffective assistance of counsel. Based upon the foregoing, respondent is entitled to summary judgment for this claim.

          c.     Failure to Object to Coerced Interrogation

Petitioner contends that his counsel was ineffective because he failed to object to his coerced or illegal interrogation. In support of his claim, petitioner alleges his Fifth, Sixth, and Fourteenth Amendment rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), were violated when the interrogating officer continued his interrogation after he invoked his right to counsel. Petitioner also alleges that the interrogating officer created a coercive environment.

The court will begin with the objective prong of petitioner's ineffective assistance of counsel claim.[1] The alleged <u>Miranda</u> constitutional violations at issue were evident at the time petitioner pleaded guilty. As a law enforcement officer, petitioner, especially, would have been aware of any potential <u>Miranda</u> issues prior to the entry of his guilty plea. Based upon these facts, petitioner had the opportunity to take the alleged <u>Miranda</u> issues into consideration at the time he pleaded guilty. Additionally, petitioner's representations at his at his plea hearing establish that he was satisfied with his counsel and that his plea was knowing and voluntary. For instance, petitioner testified at his hearing that he discussed his case fully with his attorney, that his attorney explained the nature of

---

[1] Petitioner alleges that the alleged violation of his <u>Miranda</u> rights resulted in him admitting to the investigating officers that the victim kissed him twice on his left cheek after she hugged him goodbye on two separate occasions. This evidence supported his two convictions for taking indecent liberties with a minor. However, there is no evidence in the record that petitioner made any admission during the interrogation to support his second-degree rape charge.

13

the charges, each element of the offenses, as well as possible defenses. (Pet. Attach. p. 62.) Petitioner also testified at his plea hearing that he understood that in pleading guilty he was giving up his rights relating to a jury trial. (Id.) Finally, petitioner testified that he was satisfied with his attorney's services. (Id.) Absent clear and convincing evidence to the contrary, these representations are conclusive concerning the performance of counsel. Little v. Allsbrook, 731 F.2d 238, 240 (4th Cir. 1984); Via v. Superintendent, 643 F.2d 167, 171 (4th Cir. 1981).

Petitioner has not provided evidence to refute his assertions at his plea hearing that his plea was knowing and voluntary. Accordingly, he has not shown that his counsel's performance fell below an objective standard of reasonableness. Because petitioner failed to provide adequate factual or evidentiary support for his claim, he is unable to establish the objective prong of his claim.

Even if petitioner was able to establish the objective prong of the Strickland test, he still is not entitled to relief because he is unable to satisfy the subjective prong. Specifically, petitioner is unable to show that, but for his counsel's error, he would not have plead guilty and would have insisted on going to trial. The Fourth Circuit has stated that the standard used to determine prejudice in these cases is whether a reasonable person would choose to reject the plea and go to trial. Ostrander v. Green, 46 F.3d 347, 355-56 (4th Cir. 1996), overruled on other grounds by, O'Dell v. Netherland, 95 F.3d 1214 (4th Cir. 1996).

Petitioner initially was charged with first-degree rape and first-degree sexual offense, both Class B-1 felonies. Petitioner was informed that he faced a sentencing range of sixteen (16) to twenty (20) years imprisonment for each Class B-1 felony if he was convicted. (Pet. Attach. p. 34.) In exchange for his plea bargain, the State agreed to dismiss both the first-degree rape and first-degree sex offense charges. (See id. p. 64.) Petitioner ultimately pleaded guilty to second degree

14

sex offense and two counts of taking indecent liberties with a child. Petitioner now is serving a sentence of fifty-four (54) to seventy-four (74) months imprisonment, with two suspended sentences of thirteen (13) to sixteen (16) months imprisonment with probation. Petitioner has not presented any evidence to support a finding that facing these circumstances, a reasonable person would choose to reject the plea and go to trial. Nor has petitioner, himself, stated that he would have rejected his plea and insisted on going to trial under these circumstances. Accordingly, petitioner has failed to establish prejudice. As a result, the decision of the MAR court was not contrary to, nor did it involve an unreasonable application of clearly established federal law. Thus, respondent is entitled to summary judgment for this claim.

d. Failure to Object to Unlawful Arrest

Petitioner alleges that his counsel was ineffective because he failed to object to his unlawful arrest and to his unlawful search and seizure. Petitioner states that his arrest was unlawful because the arresting officer disclosed, to a magistrate, electronic communications that were acquired by illegal interception or unauthorized access in violation of the Stored Communications Act.

The court begins with the objective prong of petitioner's ineffective assistance of counsel claim. As with the preceding ineffective assistance of counsel claim, the alleged constitutional violations at issue were evident at the time petitioner pleaded guilty. Petitioner particularly would be aware of these alleged constitutional violations because he was a law enforcement officer at the time of his arrest. Additionally, petitioner represented at his plea hearing that he was satisfied with his counsel and that his plea was knowing and voluntary. As stated, absent clear and convincing evidence to the contrary, petitioner's representations at his plea hearing are conclusive concerning the performance of counsel. See Little, 731 F.2d at 240. Petitioner has not presented any evidence

15

to refute his assertions at his plea hearing that his plea was knowing and voluntary. Accordingly, he has not shown that his counsel's performance fell below an objective standard of reasonableness, and he is unable to establish the objective prong of his ineffective assistance of counsel claims.

The court now turns to the subjective prong of his ineffective assistance of counsel claims. For the reasons stated in the above ineffective assistance of counsel claim, the court finds that petitioner is unable to show that, but for his counsel's alleged error, he would not have pleaded guilty and would have insisted on going to trial. The court further notes that petitioner, himself, has not stated that he would have rejected his plea and insisted on going to trial under these circumstances. Accordingly, petitioner has failed to establish prejudice. As a result, the decision of the MAR court was not contrary to, nor did it involve an unreasonable application of clearly established federal law. Thus, respondent is entitled to summary judgment for these claims.

      e.      Bad Advice Regarding Chance of Success on Appeal

Petitioner argues that his counsel was ineffective because he incorrectly advised him that he would not be successful if he filed a direct appeal.[2] In particular, petitioner argues that his counsel induced him into pleading guilty by informing him that he would "stand little to no chance for [success] on appeal." (DE # 12, p. 8.) Petitioner states that he would have gone to trial if his counsel had not mislead him regarding his chances of success on appeal.

In order to assist a criminal defendant effectively, counsel must "advise [the defendant] of his right to appeal, the manner and time in which to appeal and whether the appeal has any hope of success." Nelson v. Peyton, 415 F.2d 1154, 1157 (4th Cir. 1969). Although a defendant may be

---

[2] The court notes that petitioner has made clear to the court that he is not alleging that his counsel failed to advise him of his right to appeal, or that his counsel disregarded his direction to file an appeal on his behalf. (DE # 19, p. 1.)

guided by counsel's advice about the poor prospects of an appeal, he must be advised of his right to appeal before he makes a decision to waive appeal. Shiflett v. Virginia, 447 F.2d 50, 53-54 (4th Cir. 1971).

In this case, petitioner does not allege that his counsel failed to advise him regarding his right to appeal. Nor does petitioner allege that he directed his counsel to file an appeal, but his counsel failed to follow his direction. Rather, petitioner expresses displeasure with his counsel's advice that an appeal likely would not be successful. Petitioner, however, does not demonstrate that his counsel's advice regarding his potential for success on appeal was unreasonable. Moreover, the evidence in the record establishes that counsel's advice was reasonable under the circumstances. For instance, the evidence in the record demonstrates that petitioner pleaded guilty and received the exact sentence called for in his plea agreement. The record also reflects a strong evidentiary basis for a finding that he was guilty of the crimes to which he pleaded guilty. There are no non-frivolous issues that would have been appropriate to raise on appeal.[3] Finally, petitioner has not demonstrated that a reasonable person in his shoes would have chosen to forgo his pleading guilty, had he been given different advice regarding his likelihood of success on appeal. Based upon the foregoing, petitioner has not satisfied either the objective or subjective prongs of the Strickland test for ineffective assistance of counsel. Thus, this claim is without merit, and respondent is entitled to summary judgment.

---

[3] Petitioner states that there were non-frivolous issues that he could have raised on appeal. In particular, petitioner states that he could have raised the legality of his search and seizure and his arrest. As discussed below, these claims would have been barred by his knowing and voluntary guilty plea. See Tollett v. Henderson, 411 U.S. 258, 267 (1973).

17

2.    Denial of Right to Present Evidence

In his second claim, petitioner alleges he was denied the right to present evidence in his defense in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Petitioner raised this claim in his MAR. The MAR court adjudicated this claim and summarily dismissed it on the merits.

This claim centers primarily around petitioner's assertion that he was prevented from introducing evidence regarding the authenticity of some of the emails collected to use as evidence in his criminal action. As stated, petitioner entered a guilty plea in this case. A valid guilty plea constitutes the admission of the material elements of a crime. See McCarthy v. United States, 394 U.S. 459, 466 (1969). A voluntary guilty plea normally forecloses an attack based on any antecedent, non-jurisdictional errors. See Tollett v. Henderson, 411 U.S. 258, 267 (1973). Following final judgment, collateral attack is limited to whether the plea was counseled and voluntary. See, e.g., United States v. Broce, 488 U.S. 563, 569 (1989). Therefore, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims related to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett, 411 U.S. at 267. The Supreme Court's ruling in Tollett applies to actions in which a defendant has entered an Alford plea. See Smith v. Beck, No. 1:06CV489, 2007WL2746872, *8 (M.D.N.C. Sept. 19, 2007) (unpublished), appeal dismissed, 268 Fed. Appx. 260 (4th Cir. 2008) (unpublished).

The court previously in this order determined that petitioner's guilty plea was knowing and voluntary. Because petitioner entered a knowing and voluntary guilty plea, he waived his challenge

18

to any antecedent, non-jurisdictional errors such as his alleged inability to present evidence. Therefore, this claim is without merit.

   3.  Fourth Amendment Claims

  In his third and fourth claims, petitioner argues that his conviction was obtained in violation of the Fourth Amendment of the United States Constitution because evidence was obtained pursuant to an unreasonable search and seizure and in violation of the Stored Communications Act. Petitioner raised these claims in his MAR. The MAR court adjudicated these claims, and found them to be without merit.

  As stated, a voluntary guilty plea normally forecloses an attack based on any antecedent, non-jurisdictional errors. See Tollett, 411 U.S. at 267. Petitioner entered a knowing and voluntary guilty plea. Additionally, the court finds that petitioner's alleged Fourth Amendment claims are antecedent, non-jurisdictional errors. See United States v. Murphy, 380 Fed. Appx. 344, 2010 WL 2145216, *1 (4th Cir. May 28, 2010) (unpublished). Thus, petitioner's Fourth Amendment claims are barred pursuant to Tollett. See United States v. Cannady, 384 Fed. Appx. 253, 2010 WL 2512350, *1 (4th Cir. June 23, 2010) (unpublished). Thus, respondent is entitled to summary judgment for these claims.

   4.  Change in Law

  In his fifth claim, petitioner contends that the State relied upon inadmissible emails to obtain petitioner's conviction. Petitioner states that the law has changed, and that the change in the law results in a violation of his rights pursuant to the Due Process Clause. Petitioner raised this claim in his MAR. The MAR court adjudicated this claim and found it to be without merit.

19

Petitioner states that the emails obtained by the State contained irrelevant hearsay, lacked a trustworthy foundation, and could not be authenticated. Petitioner also states that the emails were not business records of My Space, and are inherently untrustworthy. In support of his argument that the change in law governing the admissibility of the challenged emails, petitioner cites to two cases. United States v. Jackson, 208 F.3d 633, 638 (7th Cir. 2000) and St. Clair v. Johnny's Oyster & Shrimp, Inc., 76 F. Supp. 2d 773, 774-75 (S.D. Tex. 1999).

The cases cited by petitioner are from the Seventh Circuit court of appeals and the Southern District of Texas, and neither are binding on this court. Moreover, petitioner was sentenced on September 22, 2008. The cases cited by petitioner were decided in the years 2000 and 1999, well before petitioner was sentenced in this action. Accordingly, the case law petitioner cited was available to him at the time he entered his guilty plea. As stated, a voluntary guilty plea normally forecloses an attack based on any antecedent, non-jurisdictional errors. See Tollett, 411 U.S. at 267. The court finds that petitioner's attempt to essentially allege a Fourth Amendment claim regarding the admissibility of the contested emails is an antecedent, non-jurisdictional error. Thus, this claim is barred pursuant to Tollett.

5.      Newly Discovered Evidence

In his sixth claim, petitioner alleges that he has discovered new evidence to demonstrate that the emails between himself and the victim were altered. Petitioner states that he received this new evidence when he obtained a copy of his case file from his attorney on October 15, 2009.

In order to obtain a new trial based on newly discovered evidence, a defendant has "to satisfy the severe burden of demonstrating that [such] evidence probably would have resulted in acquittal." United States v. Augurs, 427 U.S. 97, 111 n.119 (1976). In this case, there is evidence in the record

20

that petitioner disputed the authenticity of the emails at issue prior to entering his guilty plea. There additionally is evidence that petitioner participated in testing the authenticity of the emails prior to entering his guilty plea, and was aware of the results. The newly discovered evidence also reflects that petitioner was aware, at the time of his arrest, of the victim's alleged sexual history, and the fact that she had accused her father of molesting her. Further, petitioner has not demonstrated that there is a reasonable probability that he would have been acquitted if he had proceeded to trial with the alleged newly discovered evidence. Rather, he merely makes vague conclusory allegations that the evidence is newly discovered and that it would establish his innocence. Petitioner's unsupported allegations do not warrant relief. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogated on other grounds recognized by Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999) ("In order to obtain an evidentiary hearing . . . a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.") Thus, petitioner has not demonstrated that he is entitled to relief on the grounds of his alleged newly discovered evidence.

Additionally, to the extent that petitioner seeks to proceed with a claim in connection with the alleged tampered emails, it also is without merit. Essentially, pursuant to the analysis set forth above, this claim would be barred pursuant to Tollett. See Tollett, 411 U.S. at 267 (stating a voluntary guilty plea normally forecloses an attack based on any antecedent, non-jurisdictional errors"). Based upon the foregoing, respondent is entitled to summary judgment for this claim.

      6.     Post-Conviction Error

In his final claim, petitioner argues that the superior court lacked jurisdiction to rule upon his MAR, that the MAR court's ruling was unreasonable and contrary to well established federal law,

21

and that the superior court judge who ruled on his MAR was biased against him. A petitioner has no cognizable federal habeas claim for alleged deficiencies in state post-conviction proceedings. Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review). Here, the sole basis for petitioner's claim is to attack the state post-conviction proceedings. Therefore, this claim is without merit, and respondent's motion for summary judgment is GRANTED.

     VI.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a

22

constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment (DE # 8) and petitioner's motion to supplement (DE # 6), motion to amend (DE # 19), as well as his motion to amend his answer (DE # 20) are GRANTED. Petitioner's motion for an evidentiary hearing (DE # 13), motion to reconsider this court's denial of his appointment of counsel (DE # 16), and motion to compel (DE # 17) are DENIED. The certificate of appealability is DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the $10^{\text{t}}$ day of March, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge

23